No. 23,706.

BERTIE HARMON, *Appellee*, v. THE ELECTRIC THEATRE COMPANY, *Appellant*.

SYLLABUS BY THE COURT.

1. INJURIES—*Attendance at Theater—Cross-examination of Plaintiff's Husband—Judicial Discretion.* The trial court's discretion in limiting the cross-examination of the plaintiff's husband who testified in her behalf is held to have been properly exercised.

2. SAME—*Emotional Evidence.* The telling by a doctor of how the plaintiff tried to lift her dying grandchild and how her injured arm gave out, held not to have worked any passion or prejudice in the jury on account of the plaintiff's expressed emotion during such recital.

Appeal from Wyandotte district court, division No. 2; FRANK D. HUTCHINGS, judge. Opinion filed May 6, 1922. Affirmed.

*E. S. McAnany, M. L. Alden, T. M. VanCleave,* all of Kansas City, and *John J. Cosgrove,* of Kansas City, Mo., for the appellant.

*Fred Robertson, Edward M. Boddington, W. W. Holloway,* all of Kansas City, and *W. H. Thompson,* of Kansas City, Mo., for the appellee.

The opinion of the court was delivered by

WEST, J.: This is the third appeal in this action, which was to recover damages for injuries alleged to have been caused by a performer sliding down a wire rope at the Electric Theatre. The first trial resulted in a hung jury, the second in a verdict for the plaintiff for $4,000, and the third in a verdict for $5,000.

The two complaints relied upon in the defendant's brief are the refusal of the court to permit the witness Harmon to be further cross-examined in regard to his motive for testifying for his wife, and in allowing Doctor Harms to describe the death scene of the plaintiff's grandchild.

William Harmon is the husband of the plaintiff, and after testifying about her condition after the injury, and after admitting that he sued her for a divorce in 1919, and made an affidavit in which he charged her with neglect of duty and with certain other faults, afterwards sued the defendant to recover damages on account of her injury. He was asked the somewhat oratorical question:

"Q. Why do you say, you, a man of health and a strong man, suing for $5,000.44 damages, suing this theatre company, and knowing that her—that this condition was due as you claim in your petition when you filed that poverty affidavit, due to her injury, were you unmanly enough to sue your wife for divorce on that account? A. Well, I did it.

"Q.  You did that?  A.  Yes, sir.

"Q.  And you count yourself a man?  A.  I think I am.

"Q.  Now you are testifying in her favor, aren't you, to get money from the Electric Theatre Company?"

—and to this question an objection was sustained.  If from the examination and cross-examination shown by the record the jury were not thoroughly competent to discern and determine why he was testifying in favor of his wife, an answer to this question would have been of no benefit to them whatever.

The limits of proper cross-examination are usually within the discretion of the trial court, and we deem the ruling a proper exercise of that discretion.  (*Sumner v. Blair,* 9 Kan. 521; *The State v. Pfefferle,* 36 Kan. 90, 12 Pac. 406; *Hamilton v. Miller,* 46 Kan. 486, 26 Pac. 1030; *The State v. Ross,* 77 Kan. 341, 94 Pac. 270.)

Touching the criticised evidence of Doctor Harms it may be said that after he had described the condition of the plaintiff after her injury, and after stating that he had examined her since that time, and had taken care of her for several months, he was asked if during the fall of 1918 he called at the home of her daughter, and said that he did; that her child was seriously ill with pneumonia and died.  He described how the plaintiff picked up the child after the doctor told her she was dying, that the plaintiff used her left arm and the child dropped back in the bed, and she then picked it up with the right arm and attempted to blow breath into her. An objection was made to this testimony, stating that as it was given in the presence of the jury the plaintiff began to weep, and counsel asked that the jury be discharged, to which it was replied that the testimony was referred to merely to show the condition of the plaintiff's left arm.  The objection was overruled.  It is urged that this testimony of Doctor Harms caused the plaintiff to weep and become hysterical in the presence of the jury, but we find nothing in the record to indicate any excessive outburst of emotion.  We do not regard the average jury as, and cannot assume those impanelled in this case to have been, more sentimental than average men, and average men are sometimes moved by compassion at a plethora of tears, and sometimes become quite unsympathetic.  Considering the testimony touching the plaintiff's injury, and the course of the litigation, we find no evidence of passion or prejudice on the part of this the third jury which sat in the case.

The other assignments of error are without merit, and the judgment is affirmed.